UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| ANGELA GIBBS, | ) | |
| *Plaintiff*, | ) ) ) | |
| v. | ) | No. 4:16-cv-40-HSM-SKL |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | |
| *Defendant*. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Angela Renee Gibbs ("Plaintiff") brought this action pursuant to 42 U.S.C. § 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her supplemental security income ("SSI"). Each party has moved for summary judgment [Docs. 12 & 15] with supporting briefs [Docs. 12-1 & 16]. This matter is now ripe. For the reasons stated below, I recommend that (1) Plaintiff's motion for summary judgment [Doc. 12] be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 15] be **GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

I.  **ADMINISTRATIVE PROCEEDINGS**

Prior to the initiation of the current case, Plaintiff filed for Title XVI benefits in May 2004 (Transcript [Doc. 8] ("Tr.") 16, 64). She was denied in September 2004 and upon reconsideration in March 2005 (Tr. 16, 64). Plaintiff requested a hearing with an administrative law judge ("ALJ"), which occurred before ALJ Robert J. Erwin ("ALJ Erwin") in October 2006 (Tr. 16, 64). In December 2006, ALJ Erwin issued an unfavorable decision denying Plaintiff's benefits application (Tr. 16, 64-69).

In the instant case, Plaintiff filed her application for SSI in October 2012, alleging disability beginning October 29, 2012 due to the following impairments—mental slowness, anxiety, and arthritis in left knee (Tr. 16, 163-70, 182). Plaintiff amended the alleged onset date to October 30, 2012 at the hearing (Tr. 56-57, 177). Plaintiff's claim was denied initially and upon reconsideration at the agency level (Tr. 16). A hearing occurred before ALJ Linda Gail Roberts ("the ALJ") on July 11, 2014 (Tr. 32-59). The ALJ entered an order on September 8, 2014, finding Plaintiff was not under a disability as defined in the Social Security Act since the date the application was filed (Tr. 16-27). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner (Tr. 8-10). Plaintiff timely filed the instant action [Doc. 1].

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born November 26, 1969, making her a "younger individual" (age 18-49) on the alleged onset date (Tr. 26, 35-36, 178). The ALJ found Plaintiff is illiterate and able to communicate in English (Tr. 26). In the 2006 decision, ALJ Erwin described Plaintiff as "marginally literate" (Tr. 68). Plaintiff completed the ninth grade before dropping out of school (Tr. 36). Plaintiff has no past relevant work (Tr. 26, 36-37, 40, 182).

### B. Medical Records

In her Disability Report, Plaintiff alleged disability due to mental slowness, anxiety, and arthritis in her left knee (Tr. 182). Generally, the parties adopted the facts set forth by the ALJ regarding Plaintiff's medical treatment and vocational history (Tr. 18-27), with some exceptions

that will be addressed below. While only select portions of Plaintiff's medical records will be specifically referenced below, all relevant records have been reviewed.

### C. Hearing Testimony

At the hearing, Plaintiff and a vocational expert ("VE"), Benjamin Johnston, testified (Tr. 49-56). The Court has carefully reviewed the transcript of the testimony.

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that

significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010).

### B. The ALJ's Findings

At step one of the sequential process, the ALJ found Plaintiff had not engaged in any work activity for wages since 1989, and accordingly, had not engaged in substantial gainful activity since her alleged onset date of disability, October 30, 2012 (Tr. 18). At step two, the ALJ found Plaintiff had the following severe impairments: "history of migraine headaches, borderline intellectual functioning, depressive disorder, and anxiety-related disorder" (Tr. 18). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 20). The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform:

> medium work as defined in 20 CFR 416.967(c), except she can occasionally lift and carry 50 pounds; she can frequently lift and carry 25 pounds; she can understand and carry out simple,

> routine and repetitive tasks for two-hour periods during a normal workday; she can complete a normal work day and week; she can accept supervision and interact with coworkers; her contact with the public should be limited; and she can adapt to simple changes and avoid hazards.

(Tr. 22) (Emphasis in original omitted). At step four, the ALJ found Plaintiff has no past relevant work (Tr. 26). At step five, however, the ALJ found Plaintiff was able to perform other work existing in significant numbers in the national economy, such as cone sorter and knitting inserter (Tr. 27). These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Act from the alleged onset date through the date of the ALJ's decision (Tr. 27).

## IV. ANALYSIS

Plaintiff argues that the ALJ erred by failing to (1) fully and fairly develop the record with regard to deficits in adaptive functioning, inclusion of relevant proof of intellectual functioning, and production of current proof on intellectual functioning; (2) provide sufficient evidentiary basis regarding intellectual disability and deficits in adaptive functioning; and (3) properly assess whether Plaintiff could perform "other work" that exists in significant numbers in the national economy [Doc. 12-1]. Plaintiff also argues (4) the ALJ's decision is not based on substantial evidence [*id.*].

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *McClanahan*, 474 F.3d at 833 (internal citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence that was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of

error without further argument or authority may be considered waived).

### B. Whether the Record was Developed Fully Regarding Deficits in Adaptive Functioning

Plaintiff argues the ALJ failed to fully develop the record with regard to Plaintiff's alleged deficits in adaptive functioning. [Doc. 12-1 at Page ID # 566]. Specifically, Plaintiff asserts that at the hearing her "[c]ounsel essentially asked to inquire of the claimant on issues that relate to deficits of adaptive function," but the ALJ denied the request. [Doc. 12-1 at Page ID # 566]. In relevant part, the exchange at the hearing was as follows:

> ATTY: . . . And I really think that the -- I really think that the listing is the issue here.
>
> ALJ: Okay. All right.
>
> ATTY: I think that's what --
>
> ALJ: In what way?
>
> ATTY: . . . And, you know, I do think that the real issue here and the real reason why [Plaintiff] hasn't been employed is the educational and intellectual deficits. *If you want, we can talk to her about things that would relate to adaptive functioning.*
>
> ALJ: *No.* . . .

(Tr. 47) (emphasis added).

The ALJ bears the ultimate responsibility for ensuring that every claimant receives a full and fair hearing. *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983) (citing *Richardson v. Perales,* 402 U.S. 389 (1971)). An ALJ may deny a Plaintiff a full and fair hearing if the ALJ fails to develop the record fully. *Id.* at 1052. "There is no bright line test for determining when the administrative law judge has . . . failed to fully develop the record. The determination in each case must be made on a case by case basis." *Id.* The Sixth Circuit has

7

found an ALJ failed to develop the record fully where the hearing was "brief" – lasting "only 25 minutes" – and a plaintiff with "limited intelligence" was "only superficially questioned concerning his daily activities and his physical limitations." *Id.*

Plaintiff states that in this case, "the ALJ denied th[e] opportunity to develop the [r]ecord apparently because it would have 'cost' 5 minutes" [Doc. 12-1 at Page ID # 566]. Nowhere in the hearing transcript does the ALJ use the term "cost" or indicate that she declined to expend the time necessary to hear testimony. To the contrary, before closing the hearing, the ALJ asked Plaintiff's counsel "Have you finished, Counselor?" to which Plaintiff's counsel replied, "Yes, Your Honor" (Tr. 57). An exchanged followed, at the end of which the ALJ again asked, "Anything else, Counselor?" to which Plaintiff's counsel responded, "No, Your Honor." (Tr. 58). In all, the hearing lasted nearly 40 minutes (Tr. 34, 59). Nothing in the hearing transcript suggests Plaintiff's counsel requested additional time.

Plaintiff explains that her counsel was "fully prepared" at the hearing to inquire into issues of conceptual domain, social domain, and practical domains [Doc. 12-1 at Page ID # 566], though no such testimony was ever offered. Plaintiff now argues her counsel "thought" the ALJ responded "no" to him at the hearing "because the ALJ had already agreed and decided that [Plaintiff] was intellectually disabled, and that she didn't require more proof to be convinced" [Doc. 12-1 at Page ID # 566-67]. It is not the role of this Court or the ALJ to remedy counsel's miscalculation as to what evidence to introduce at the hearing. The claimant bears the burden to "demonstrate that her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder." *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)). Although an ALJ "has a basic obligation

8

to develop a full and fair record," the ALJ "is not required to act as the claimant's counsel or produce evidence for the claimant." *Dodson v. Comm'r of Soc. Sec.*, No. 1:12-CV-109, 2013 WL 4014715, at *13 (E.D. Tenn. Aug. 6, 2013) *(citing Born v. Sec'y of Health and Human Servs.,* 923 F.2d 1168, 1172 (6th Cir.1990); *Duncan v. Sec'y of Health and Human Servs.,* 801 F.2d 847, 856 (6th Cir.1986)). Further, because the claimant was represented by counsel, "[t]he ALJ was entitled to assume that Plaintiff . . . was presenting her best evidence in favor of benefits." *Birdwell v. Barnhart*, No. 2:06-0063, 2008 WL 2414828, at *10 (M.D. Tenn. June 12, 2008) (citing *Delgado v. Comm'r of Soc. Sec.,* 30 F. App'x 542, 549 (6th Cir.2002); *Glen v. Sec'y of Health & Human Servs.,* 814 F.2d 387, 391 (7th Cir. 1987)).

Defendant argues, "the ALJ can permissibly take little time to question the claimant at the administrative hearing." [Doc. 16 at Page ID # 595]. In support, Defendant cites *Forrest v. Comm'r of Soc. Sec.*, in which the Sixth Circuit held that "a fifteen-minute hearing sufficed because the record included thorough documentation of" the claimant's physical limitations and medical history, and the "ALJ needed little time to inquire into his negligible work experience." 591 F. App'x 359, 363 (6th Cir. 2014). Here, Plaintiff even states in her brief that "[t]he [r]ecord is already replete with deficits or reports of deficits in the conceptual domain, the social domain, and the practical domain – inability to successfully manage bills, a household, shop, cook, drive, etc." [Doc. 12-1 at Page ID # 566].

In determining Plaintiff's level of adaptive functioning, the ALJ relied in part on office treatment records and a function report (Tr. 20-22). Specifically, the ALJ found Plaintiff "does not have problems attending to her own personal care" (Tr. 200), "she walks her dog" (Tr. 399), and "she rides a four-wheeler" (Tr. 399), all of which the ALJ found "indicate she can initiate

9

and participate in activities independent of supervision or direction." (Tr. 20-21). The ALJ also found Plaintiff "does not have problems getting along with family, friends, and neighbors" (Tr. 20-21, 496) and "regularly visits friends and family members" (Tr. 200, 203), indicating she "has no more than moderate restriction in her activities of daily living" (Tr. 20). The ALJ further concluded Plaintiff has moderate difficulties "with regard to concentration, persistence, or pace" (Tr. 20) after finding Plaintiff "regularly watches television" (Tr. 200, 203) and "rides a four-wheeler" (Tr. 399).

I **FIND** the ALJ met her responsibility to fully and fairly developed the record with regard to Plaintiff's alleged deficits in adaptive functioning.

### C. Whether the Record was Developed Fully Regarding Proof of Intellectual Functioning

In determining whether Plaintiff's limitations equal the severity of Listing 12.05,[1] the

---

[1] Listing 12.05, as it appeared at the initiation of this case, states:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. The regulation for Listing 12.05 has been updated since this case began. *See* 81 Fed. Reg. 66,138-01 (Sept. 26, 2016). The current version of 12.05 now has only two paragraphs, A and B. *See Bryant v. Berryhill*, No. 7:16-CV-36-D, 2017 WL 914645, at *4 (E.D. N.C. Feb. 17, 2017), *report and recommendation adopted*, No. 7:16-CV-36-D, 2017 WL 908190 (E.D. N.C. Mar. 7, 2017). Neither party raises this as an issue. Because the current version of Listing 12.05 continues to require evidence of deficits in adaptive functioning and requires evidence that the intellectual disorder began prior to the claimant reaching age 22, the update to the regulation does not affect the analysis provided herein. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

ALJ stated in part:

> The prior ALJ decision includes reference to a Full Scale IQ score of 48 measured with the Wechsler Adult Intelligence Scale-Third Edition (WAIS-III) by a consultative examiner in August 2004. However, the examiner also indicated that the claimant's intellectual scores were invalid due to a lack of effort and inconsistent results. In addition, the examiner noted the claimant's malingering. Therefore, the undersigned finds the IQ scores measured during the August 2004 consultative examination are invalid, and there is no other evidence of IQ scores of 59 or less.
>
> The prior ALJ decision includes reference to another psychological examination performed in February 2005. During this evaluation, the examiner administered the WAIS-III, which measured the claimant's Full Scale IQ as 64. However, the examiner also indicated that the claimant's intellectual scores might have underestimated her potential, as she worked rapidly and did not recheck her work during testing. Given the claimant's history of a lack of effort during intellectual testing, the undersigned finds the claimant's IQ scores obtained in February 2005 are not a *valid* assessment of the claimant's intellectual functioning.

(Tr. 21-22) (internal citations to exhibits omitted; emphasis in original). In the excerpt, the ALJ cited to ALJ Erwin's decision (Tr. 21-22). Like the ALJ, ALJ Erwin had found the first evaluation "invalid due to lack of effort and inconsistent results." (Tr. 67). As for the second, ALJ Erwin re-stated that evaluator's doubts but did not declare it "invalid" (Tr. 67-68), as the ALJ does here (Tr. 22). ALJ Erwin stated the second evaluator "felt the scores 'may slightly underestimate potential' because she worked rapidly and did not recheck her work, this evaluator found the claimant's achievement and IQ scores consistent with her scholastic history" but "assessed moderate limitation only in the area of adaptation" (Tr. 67). ALJ Erwin added Plaintiff "denied substance abuse, and failed to report her history of methamphetamine abuse to either evaluator." (Tr. 68).

Plaintiff finds it "appalling" that the ALJ cited "to the incomplete summary" of certain records related to Plaintiff's education and intellectual testing from ALJ Erwin's decision (Tr. 22, 67-68) while the ALJ also made no effort to locate the past exhibits or include them in the current record [Doc. 12-1 at Page ID # 567]. The records at issue, Plaintiff's counsel stated at the hearing, include two consultative examinations and a school record (Tr. 47). Plaintiff asserts those exhibits are in the custody of the SSA [Doc. 12-1 at Page ID # 567]. Plaintiff's counsel requested the production of the documents by letter to the ALJ on June 23, 2014 (Tr. 225-27), shortly before the July 11, 2014 hearing, and again at the hearing (Tr. 47-49). Citing no statutory or case law and without articulating a legal standard, Plaintiff asserts the ALJ's actions amount to "an abuse of discretion." [Doc. 12-1 at Page ID # 567].

Defendant asserts the Sixth Circuit has held an ALJ is not required "to make specific comparisons with the evidence supporting the prior final decision." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 725-26 (6th Cir. 2013) (citing *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997)); SSAR 98-4(6). Instead, "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination *absent changed circumstances*." *Drummond*, 126 F.3d at 842 (emphasis added; citations omitted). Should a claimant's new application for benefits be before an ALJ after previously being denied by another ALJ, "the proper inquiry is whether 'new' and additional evidence or changed circumstances provide a basis for a different finding of the claimant's residual functional capacity." *Rudd,* 531 F. App'x at 725-26 (citing SSAR 98-4(6)). Defendant states that here, "Plaintiff did not independently obtain and present the required IQ testing" [Doc. 16 at Page ID # 591]. Defendant argues, "[t]he ALJ properly focused on the new and material

evidence to determine whether a departure from ALJ Erwin's findings was required; inclusion of the prior psychological consultative examinations would not have aided that inquiry." [Doc. 16 at Page ID # 592].

In her decision, the ALJ, quoting *Drummond* 126 F.3d at 842, noted, "[a]bsent evidence of an improvement in the claimant's conditions, a subsequent ALJ is bound by the findings of a previous ALJ." (Tr. 16). The ALJ then clarified, "Because the claimant's mental condition has changed since the prior ALJ decision, the undersigned is not bound by all of the prior ALJ findings." (Tr. 16). Still, because Plaintiff submitted no new and material evidence related to testing Plaintiff's level of intellectual functioning, the ALJ did not err in adopting ALJ Erwin's findings, declaring the 2005 test to be invalid, or deciding to not include in the record the consultative psychological evaluations or school record ALJ Erwin relied on to make his decision. Accordingly, I **FIND** on this issue the ALJ did not abuse her discretion or commit reversible error.

### D. Whether the Record was Developed Fully Regarding Production of Current Proof of Intellectual Functioning

Plaintiff next argues that the ALJ chose an "impermissible option" under the regulations by declining to either "include the previously produced intelligence tests results in[] the [r]ecord" or "order new testing." [Doc. 12-1 at Page ID # 569]. She argues this "was a failure to fully and fairly develop the [r]ecord." [*Id.*]. Plaintiff's counsel requested both in a brief filed July 10, 2014, one day before the hearing (Tr. 228-29). As described above, prior to the 2006 hearing before ALJ Erwin, Plaintiff had undergone two separate evaluations intended to measure her IQ (Tr. 67). Ultimately neither of the evaluations was included as an exhibit in the current record, though the ALJ discussed and generally adopted ALJ Erwin's findings regarding the same (Tr.

13

21-22). For reasons stated in the above section, I **FIND** the ALJ did not commit reversible error for declining to include in the record Plaintiff's 2004 and 2005 evaluations. The remaining question, then, is whether the ALJ erred by declining to order new testing on Plaintiff's intellectual function.

Plaintiff's counsel stated at the hearing that to determine intellectual functioning, "Perhaps the cleaner way to do it is with a CE with testing now." (Tr. 48). The ALJ responded, "Perhaps. I will think about it. I have two CEs, that both doctors are not - - one says malingering. And the other says may not have given the best effort. So, I'm not 100 percent happy with that." (Tr. 49). The ALJ did not order an additional CE with IQ testing. Defendant, citing *Culp v. Comm'r of Soc. Sec.*, 529 F. App'x 750, 751 (6th Cir. 2013) and *Robertson v. Comm'r of Soc. Sec.,* 513 F. App'x 439 (6th Cir. 2013), argues the ALJ had no obligation to order other testing. In *Robertson,* the Sixth Circuit held the ALJ was not obligated to order a consultative examination where the record contained a "considerable amount of medical evidence" relevant to the claimant's limitation and "resulting functional capacity," "including test results, physicians' notes, and opinion evidence from multiple physicians, and the lack of any significant inconsistencies in the evidence." 513 F. App'x at 441; *see also Myers v. Colvin*, No. 1:14-CV-115, 2015 WL 3440860, at *3 (E.D. Tenn. May 28, 2015).

Here, in determining the severity of Plaintiff's intellectual impairments and resulting RFC, the ALJ relied on several years of office treatment records (Tr. 312-36, 348-79, 380-497); a psychological consultative examination of Plaintiff, conducted by Stephen Hardison, M.A. ("Mr. Hardison"), in association with Carolyn Valerio, Psy.D. ("Dr. Valerio") in January 2013 (Tr. 340-43); a report by state agency psychological consultant, S. Jessee, M.D., in February

14

2013 (Tr. 73-84); and a report by state agency psychological consultant Robert Paul, Ph.D. in March 2013 (Tr. 86-100). Additionally, the ALJ considered ALJ Erwin's prior findings from two psychological consultative evaluations of Plaintiff that both included IQ testing (Tr. 68). The ALJ found the assessments by Dr. Valerio, Dr. Paul, and Dr. Jessee were "consistent" or "generally consistent" with the record, including her mental health treatment history and reports in the treatment notes on Plaintiff's activities of daily living (Tr. 25-26). Considering the medical evidence, the ALJ determined Plaintiff retained the ability to perform unskilled work (Tr. 23, 26).

Defendant also argues "The ALJ reasonably found that though the record did not contain a valid IQ score as required by the Listing, the other evidence of record made obtaining such a score unnecessary" because the ALJ concluded "the claimant retains the level of adaptive functioning to perform many work-related activities" [Doc. 16 at Page ID # 593] (citing (Tr. 22)). Listing 12.05(c) requires, in part, "significantly subaverage general intellectual functioning with deficits in adaptive functioning." Defendant argues because the ALJ did not find Plaintiff has deficits in adaptive functioning, "the additional testing to obtain IQ scores would not have impacted the outcome of the decision, and thus, remand is not required." [Doc. 16 at Page ID # 593]. I agree.

Given the amount of other medical evidence in the record related to Plaintiff's intellectual impairments and the ALJ's findings related to Plaintiff's adaptive functioning, I **FIND** the ALJ did not commit reversible error in declining to order an additional consultative evaluation with IQ testing.

15

### E. Evidentiary Basis for ALJ Decision on Intellectual Disability

Plaintiff next argues "there is absolutely no proof that the claimant is *not* intellectually disabled." [Doc. 12-1 at Page ID # 569] (Emphasis added). However, it is well established that it is the claimant's "burden to show the extent of [her] impairments," *Ealy*, 594 F.3d at 512-13, rather than the obligation of the Commissioner to establish that no such impairment exists. Plaintiff's argument to this point is without merit.

Plaintiff argues the record as "a whole does not reflect a claimant without deficits of adaptive functioning." [Doc. 12-1 at Page ID # 570]. Deficits in adaptive functioning consider " 'the person's effectiveness in areas such as social skills, communication, and daily living skills, and how well the person meets the standards of personal independence and social responsibility expected of his or her age by his or her cultural group.' " *Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993) (quoting Manual of Mental Disorders 28–29). Listing 12.05(c) requires such deficits must be "significant." *Griffith v. Colvin*, No. 1:13-CV-2502, 2014 WL 5858337, at *4 (N.D. Ohio Nov. 12, 2014). "Plaintiff bears the burden of showing he had 'deficits in adaptive functioning' before age 22." *Id.* (citing *Cox v. Comm'r of Soc. Sec.,* 2012 WL 4748347 (E.D. Tenn. Sept. 7, 2012)).

Here, the ALJ found Plaintiff "has no more than moderate restriction in her activities of daily living" (Tr. 20) and "retains the level of adaptive functioning to perform many work-related activities." (Tr. 22). Specially, the ALJ determined Plaintiff "can initiate and participate in activities independent of supervision or direction" (Tr. 20-21), has moderate difficulties "with regard to concentration, persistence, or pace" (Tr. 20). The ALJ provided specific examples on which she based her conclusions. Namely, Plaintiff's ability to attend to her own personal care

(Tr. 200) and participate in activities such as walking her dog (Tr. 399), riding a four-wheeler (Tr. 399), regularly visiting friends and family members (Tr. 200, 203), and regularly watching television (Tr. 200, 203). The ALJ also stated that Plaintiff had reported "she helped her mother set up a trailer" (Tr. 22, 312) and that she "was employed for a period after her alleged onset date of disability," based on Plaintiff's statement to Volunteer Behavioral Health Care System that she has "new friends. From my new job over there in Chattanooga." (Tr. 427).

Taking issue with the specific examples cited by the ALJ, Plaintiff states

> None of the cited activities are beyond the capability of an intellectually disabled person covered by the below 70 and above 60 IQ range. It is insulting to the population of people of that level of intellectual impairment to indicate their impairment would prevent them from, **going for a walk alone, enjoying and partaking in a sport or hobby that requires little or no interpersonal interaction and essentially no communication during the activity, or performing chores with a close relative.**

[Doc. 12-1 at Page ID # 571-72] (Emphasis in original). Defendant responds the specific examples cited by the ALJ indicate "that Plaintiff had the required adaptive functioning to work, along with evidence that she had, in fact, worked." [Doc. 16 at Page ID # 597].

The medical evidence in the record supports the ALJ's conclusion as to Plaintiff's level of adaptive functioning. The ALJ gave "significant weight" to the opinion of Dr. Jessee, who stated Plaintiff "can understand and carry out simple, routine and repetitive tasks for two-hour periods during a normal workday; . . . complete a normal work day and week; . . . accept supervision and interact with coworkers." (Tr. 25, 73-84). Dr. Jessee also limited Plaintiff's contact with the public. (Tr. 25, 73-84) The ALJ found Dr. Paul "opined similar mental limitations." (Tr. 25, 86-100). Dr. Valerio and Mr. Hardison concluded Plaintiff had no more than mild or moderate restrictions in certain abilities related to adaptive functioning (Tr. 25, 340-

17

43).

For the above reasons, I **FIND** the ALJ provided substantial evidence to support her conclusion regarding Plaintiff's level of adaptive functioning.

### F. The ALJ's Determination that Plaintiff Could Perform "Other Work"

The ALJ found Plaintiff has the RFC "to perform medium work as defined in 20 CFR 416.967(c), except she can occasionally lift and carry 50 pounds; she can frequently lift and carry 25 pounds[.]"(Tr. 22). Plaintiff argues "None of the questions asked of the [VE] match the [RFC] ultimately determined by the ALJ." [Doc. 12-1 at Page ID # 573]. Defendant agrees—"none of the hypothetical questions presented to the [VE] included the exact limitations included in the RFC," though "[i]mportantly, the mental limitations presented in the hypothetical question matched those in the RFC exactly." [Doc. 16 at Page ID # 602]. Defendant also argues the differences between the physical RFC presented to the VE and that included in the decision are "without consequence" and do[] not require remand [*id.*]. The ALJ determined Plaintiff has the RFC for medium work (Tr. 22). The regulations clarify that "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. 416.967(c).

Here, the ALJ gave the VE a hypothetical that included a reduced range of light work (Tr. 50), and the VE provided three occupations for light, unskilled work (Tr. 51-52) – a cone sorter (Dictionary of Occupational Titles ("DOT") No. 922.687-018), which requires light, unskilled work and has 1,500 to 2,000 jobs in Tennessee regionally and 25,000 jobs nationally; a knitting inserter (DOT no. 928.687-062), which requires light unskilled work and has 1,200 to

1,500 jobs in Tennessee and 15,000 jobs nationally; and sandwich preparation (DOT No. 317.664-014), which requires light work, unskilled, SVP-2 and has 1,500 to 2,000 jobs in the region; 20,000 nationally (Tr. 51-53). The VE also indicated an individual with "border range intelligence" would be capable of the same three occupations. (Tr. 52). The ALJ only listed the first two occupations – cone sorter and knitting inserter – in her decision (Tr. 27).

The ALJ included in her decision that "After the hearing, the undersigned determined the actual DOT number for the occupation of knitting inserter is actually 92<u>0</u>.687-062. Given the numbers' similarities, the undersigned finds the vocational expert's testimony reflects the requirements of this occupation." (Tr. 27) (underlining in original). Plaintiff states the reformed "knitting inserter" code that the ALJ listed is actually for a "cardboard inserter," and alleges the ALJ "actually substituted a different job title with a different [DOT] code from what the testimony stated" and that she did so without contacting counsel. [Doc. 12-1 at Page ID # 573]. Regardless, the ALJ's error is harmless and not grounds for remand. Plaintiff could perform the occupation of "cone sorter," which the VE testimony indicates "exist[s] in significant numbers in the national economy." (Tr. 26-27, 51-52). Accordingly, I **FIND** the ALJ did not commit reversible error.

### G. Whether the ALJ's Decision Was Based on Substantial Evidence

Finally, citing no new law, regulations, or specific references to the record, Plaintiff argues "For all the reasons stated above, the decision is not in any way shape or form based on evidence that a reasonable fact finder would agree is sufficient to support the conclusions reached." [Doc. 12-1 and Page ID # 574]. This summary argument adds little, and the issue of substantial evidence has been addressed previously herein. As stated elsewhere and explained

more thoroughly in the above sections, the ALJ considered and relied on Plaintiff's treatment history, medical records, consultative evaluations, medical reports, and her own testimony, as well as the testimony of the VE and the past decision of ALJ Erwin. Accordingly, I **FIND** the ALJ's decision is supported by substantial evidence.

## V.   CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I **RECOMMEND** that:[2]

>  (1)   Plaintiff's motion for summary judgment [Doc. 12] be **DENIED**.
>
>  (2)   The Commissioner's motion for summary judgment [Doc. 15] be **GRANTED**.
>
>  (3)   The Commissioner's decision denying benefits be **AFFIRMED**.

s/ <i>Susan K. Lee</i><br>
SUSAN K. LEE<br>
UNITED STATES MAGISTRATE JUDGE

---

[2] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).